Slip Op. 10 - 90

UNITED STATES COURT OF INTERNATIONAL TRADE

- - - - - - - - - - - - - - - - - - - -x
AROMONT USA, INC.,                      :

                      Plaintiff, :

        v.                      : Court No. 03-00354

UNITED STATES,                          :

                      Defendant. :
- - - - - - - - - - - - - - - - - - - -x

Opinion & Order

[Upon cross-motions as to classification of
 certain food flavorings, summary judgment
 for the plaintiff.]

Decided:  August 12, 2010

    Bryan Cave LLP (Brian A. Sher and Joseph H. Heckendorn) for the plaintiff.

    Tony West, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Marcella Powell); and Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection (Sheryl French), of counsel, for the defendant.

        AQUILINO, Senior Judge:   U.S. Customs and Border Protection ("CBP") classified certain merchandise derived from veal, chicken, duck, lamb, beef, fish, lobster, mushroom or vegetable stock under subheading 2104.10.00 ("Soups and broths and preparations therefor . . . Other") of the Harmonized Tariff Schedule of the United States ("HTSUS") (2001) and imported from

France by Aromont USA, Inc., which protested that classification, taking the position that those goods should have been classified under subheading 2106.90.99, covering "Food preparations not elsewhere specified or included . . . Other". Upon denial of the protest after liquidation of duties[1], the plaintiff commenced this case, and, following joinder of issue, the defendant interposed a motion for summary judgment of dismissal.[2] The plaintiff has responded with a cross-motion for summary judgment on its behalf.

Jurisdiction of the court is pursuant to 19 U.S.C. §1581(a) and 28 U.S.C. §2631(a).

I

The import, of course, of a motion for summary judgment is that there is no genuine issue of material fact that requires trial within the meaning of USCIT Rule 56 and teaching

---

[1] They amounted to 100 percent *ad valorem* pursuant to the authority granted the U.S. Trade Representative by section 301 of the Trade Act of 1974, as amended, 19 U.S.C. §2411. See Defendant's Memorandum, p. 2 n. 3.

[2] The motion papers make clear that only plaintiff's entries classified under subheading 2104.10.00 remain at issue, not any of those encompassed by Protest No. 1101-02-100655, which was originally impleaded herein. Compare Defendant's Statement of Undisputed Material Facts, paras. 6-8, with Plaintiff's Response, paras. 6-8.

of <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986). Here, the parties' papers in support of their cross-motions do not lead this court to conclude otherwise. Indeed, the plaintiff admits defendant's description of the preparation if not nature of the products at issue, which are listed in its Exhibit A[3], to wit:

    a.    First, Aromont ran the bones through the "guillotine" to cut them into small sizes.

    b.    Next, Aromont fe[]d the bones directly into cookers, or the bones were roasted.

    c.    The bones were then simmered for a long period of time.

    d.    The resulting "classical stock" had the fat skimmed off and the bones and other sediment removed. The resulting mixture was a "clear richly flavored broth that [was] then reduced to a rich honey like consistency."

    e.    The honey paste was then pumped into mixing and packing machines.

                      *        *        *

---

[3] Listed, in each instance "concentrated", are beef stock; beef stock flavor; boiled chicken broth, duck fat and chicken fat flavor; roast chicken broth and duck fat flavor; duck broth and duck fat flavor; fish broth; lamb broth and lamb fat flavor; lobster broth; mushroom base; mushroom stock; veal broth flavor; veal and beef broth flavor; vegetable stock [numerical annotation of each omitted]. <u>See</u> <u>generally</u> Defendant's Exhibit K.

16.  There is no difference between the merchandise Aromont marketed as "demiglaces" and those it marketed as "stocks."

17. With the exception of the vegetable varieties, Aromont's "stocks" were prepared in the exact same manner.[4]

A

The primary thrust of plaintiff's protest to CBP, and now on appeal to this court, is that two rulings it obtained earlier from Customs, namely NY800645 (Aug. 26, 1994) and HQ957024 (March 3, 1995)[5], should have led the agency to the classification preferred herein. They did not. Nor can this court conclude otherwise now. The Service's ruling practice and procedure published at the time of entry were in pertinent part:

> *Tariff classification rulings*. Each ruling letter setting forth the proper classification of an article under the provisions of the [HTSUS] will be applied only with respect to transactions involving articles identical to the sample submitted with the ruling request or to articles whose description is identical to the description set forth in the ruling letter.

19 C.F.R. §177.9(b)(2) (2001). NY800645 describes one of Aromont's proffered substances as a beef flavoring in powder

---

[4] Compare Defendant's Statement of Undisputed Material Facts, para. 14 and paras. 16 and 17 (citations omitted), with Plaintiff's Response, paras. 14 and 16 and 17.

[5] Plaintiff's Exhibits A and B.

form without the use of beef extract. As for the other substances referred for ruling, all liquids, Customs found:

    1) Veal flavoring – contains veal extract, veal fat, concentrates of carrot, onion, leek, tomato, garlic and mushroom, olive oil, sunflower oil, glucose, dextrine and other ingredients.

    2) Chicken flavoring – contains chicken extract, chicken fat, duck extract, egg yolk, concentrates of carrot, onion and leek, olive oil, sunflower oil, glucose, dextrine and other ingredients.

    3) Duck flavoring – contains duck extract, duck fat, sunflower oil, glucose, dextrine, and other ingredients.

    4) Lamb flavoring – contains lamb extract, lamb fat, concentrates of carrot, onion, leek and garlic, olive oil, sunflower oil, glucose, dextrine, and other ingredients.

    5) Fish flavoring – contains fish extract, chicken fat, seafood extract, concentrates of carrot, onion and shallot, sunflower oil, glucose, dextrine, and other ingredients.

    6) Lobster flavoring – contains fish extract, lobster extract, chicken fat, seafood extract, concentrates of carrot, onion, tomato and shallot, sunflower oil, glucose, dextrin and other ingredients.

    7) Beef flavoring – contains glucose, dextrine, autolysed yeast, soya lecithin, salt and other ingredients.[6]

---

[6] The focus of HQ957024 upon Aromont request for reconsideration by Headquarters was not on these findings *per se*, rather whether the percentages of the animal extracts therein entitled the flavorings to classification under HTSUS

(footnote continued)

On its face, this description is not "identical" to the description of plaintiff's merchandise currently at bar, either as admitted by it with regard to defendant's statement of undisputed material facts, supra, or in its own statement or pleadings. Cf. Plaintiff's Complaint *passim* and its Counter Statement of Undisputed Facts, paras. 3-8. Hence, the requirement of section 177.9(b)(2) is not satisfied, nor is the other requirement of that section met in the papers before this court. That is, they do not show that plaintiff's present products are "identical" to the samples upon which Customs made its findings in NY800645 and recited above.

B

The first general rule of interpretation of the HTSUS is that classification shall be determined according to the terms of its headings and any relative section or chapter notes. In this case, the defendant stands by CBP's classification of plaintiff's goods as "broth" *eo nominee* heading 2104. But it correctly notes that that term is not defined in the HTSUS. Hence, the common and commercial meaning is presumed. See, e.g., Brookside Veneers, Ltd. v. United States, 847 F.2d 786, 789 (Fed.Cir. 1988). See also E.M. Chemicals v. United States, 920

---

heading 1603. ("Extracts and juices of meat, fish or crustaceans, molluscs or other aquatic invertebrates").

Court No. 03-00354                                                    Page 7

F.2d 910, 913 (Fed.Cir. 1990) ("[t]ariff terms are to be construed in accordance with their common and popular meaning, in the absence of a contrary legislative intent").

The defendant relies on a dictionary definition of "broth", to wit, a "liquid in which meat, fish, cereal grains, or vegetables have been cooked". Defendant's Memorandum, p. 11, quoting from Webster's Third New International Dictionary, Unabridged (1981 ed.). While obviously broad, this definition does not capture the essence of plaintiff's "concentrated" products, the processing of which results in "a rich honey like consistency" or "honey paste". CPB's National Import Specialist refers to "reduc[tion] to 70% solids." Defendant's Exhibit I, para. 7. Whatever the precise percentage, it does not connote the degree of liquidity or fluidity forever expected of a broth. To quote the paragon American lexicon, broth is

> [l]iquid in which meat, and often barley, rice, vegetables, or the like, have been gently boiled; thin or simple soup.

Webster's New International Dictionary of the English Language, Unabridged, p. 343 (2d ed. 1934). See also Plaintiff's Reply Memorandum, Exhibit B, first page. To recite from Plaintiff's Counter Statement of Undisputed Facts:

11. Aromont stocks are made from roasting bones; whereas broths are made from cooking meat in water.

12. The Aromont flavorings are physically different from broths in that they contain much less salt and are much more gelatinous.

13. The Aromont flavorings are not finished products, whereas broths are capable of being consumed.

14. Aromont is not aware of any of its customers using the products at issue as a finished soup or finished broth.

15. The largest customers of the Aromont flavorings at issue use the products as ingredients for gravies, sauces and salad dressings.[7]

Defendant's classification under HTSUS subheading 2104.10.00 ("Soups and broths and preparations therefor") encompasses not only elements *eo nominee* but also use. And,

> in the absence of legislative intent to the contrary, a product described by both a use provision and an *eo nominee* provision is generally more specifically provided for under the use provision.

United States v. Siemens Am., Inc., 653 F.2d 471, 478 (CCPA 1981). The latter such provision in 2104.10.00, as well as in plaintiff's preferred 2106.90.99, is "preparations", which is

---

[7] Citations omitted. The defendant disagrees, at least in part, with these statements of fact but also responds as to each that its "dispute is not material to the issues in this action, and therefore does not prevent summary judgment." Defendant's Response to Plaintiff's Counter Statement of Material Facts, pp. 7-9.

not defined in the HTSUS. However, inherent in the term is an expectation of specific use. See, e.g., Orlando Food Corp. v. United States, 140 F.3d 1437, 1441 (Fed.Cir. 1998), citing the definition of "preparation" in 12 The Oxford English Dictionary, p. 374 (2d ed. 1989), namely, "a substance specially prepared, or made up for its appropriate use or application, e.g. as food or medicine".

Proper classification turns on the principal use of subject merchandise. See, e.g., Clarendon Mktg., Inc. v. United States, 144 F.3d 1464, 1467 (Fed.Cir. 1998) (holding the principal use of the class is controlling, not the principal use of the specific import). Additional U.S. Rule of Interpretation 1(a) of the HTSUS provides that, in

> the absence of special language or context which otherwise requires -- a tariff classification controlled by use . . . is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of goods of that class or kind to which the imported goods belong, and the controlling use is the principal use.

Principal use has been defined as the one "which exceeds any other single use." Minnetonka Brands, Inc. v. United States, 24 CIT 645, 651, 110 F.Supp.2d 1020, 1027 (2000) (citations omitted). In evaluating principal use, courts may

consider, *inter alia*: the general physical characteristics of the merchandise, the expectation of the ultimate purchasers, the channels, class or kind of trade in which the merchandise moves, the environment of the sale, the use, if any, in the same manner as merchandise which defines the class, the economic practicality of so using the import, and the recognition in the trade of this use. United States v. Carborundum Co., 536 F.2d 373, 377 (CCPA), cert. denied, 429 U.S. 979 (1976).

In the case at bar, Aromont products are not principally used as soups or broths. They are "sold through three principal channels: large ingredient customers, food service distributors, and [] retail distributors and retail stores." Plaintiff's Memorandum, p. 13. Review of the company's sales reports reveals that Aromont's single largest industrial customer accounts for over half of its sales and uses the flavorings in gravies and sauces in its line of frozen dinners. Other applications include "brines, marinades, injections, rubs, flavor additives, and vacuum tubing." Id. at 17. In short, plaintiff's products are found in a variety of end uses:

> . . .[A]pplications abound, with the addition of wine, water, meat jus or cream; delectable traditional sauces, glazes, stocks and soups are readily fashioned or try our heat and serve EZ-Sauces and Gravies!

Defendant's Exhibit C. While the result of such application could be "soup", as imported plaintiff's goods are properly classified under heading 2106 "Food preparations not otherwise specified or included").[8]

II

In view of the foregoing, defendant's motion for summary judgment must be denied. Plaintiff's cross-motion will be granted, with summary judgment entered in its favor.

So ordered.

Decided: New York, New York
August 12, 2010

___/s/ Thomas J. Aquilino, Jr.____
Senior Judge

---

[8] In reaching this conclusion of law, based on the parties' excellent submissions in support of their cross-motions for summary judgment, the court has not found it necessary to consider the declaration of Khaled Zitoun, plaintiff's exhibit D. Ergo, defendant's motion to strike certain portions of that declaration and plaintiff's Motion for Leave to File a Supplemental Declaration of Khaled Zitoun *Instanter* can be, and each hereby is, denied as moot.

<u>J U D G M E N T</u>

UNITED STATES COURT OF INTERNATIONAL TRADE

Thomas J. Aquilino, Jr., Senior Judge

```
- - - - - - - - - - - - - - - - - -X
                                    :
AROMONT USA, INC.,
                                    :
             Plaintiff,
                                    :
       v.                                Court No. 03-00354
                                    :
UNITED STATES,                      :

             Defendant.             :
- - - - - - - - - - - - - - - - - -X
```

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is

ORDERED, ADJUDGED and DECREED that defendant's motion for summary judgment be, and it hereby is, denied; and it is further

ORDERED, ADJUDGED and DECREED that plaintiff's cross-motion for summary judgment be, and it hereby is, granted; and it is further hereby

ORDERED, ADJUDGED and DECREED that the merchandise that underlies this case is correctly

Court No. 03-00354                                                Page 2

classifiable under subheading 2106.90.99 of the Harmonized Tariff Schedule of the United States (2001); and it is further hereby

     ORDERED that Customs and Border Protection, United States Department of Homeland Security, reliquidate any entries of said merchandise that have not been liquidated under the aforesaid HTSUS subheading and refund to the plaintiff any excess duties paid, together with interest thereon as provided by law.

Dated:  New York, New York
        August 12, 2010

                                      ___/s/ Thomas J. Aquilino, Jr.____
                                              Senior Judge

## NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____  By: _____
                                                                                  Deputy Clerk